Filed 6/15/21  P. v. Salas CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

MISAEL MADRIGAL SALAS,

     Defendant and Appellant.

E075277

(Super.Ct.No. FVA1100791)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Bridgid M. McCann, Judge.  Reversed.

Quadros & Cuellar, Micheli Quadros and Sarah Cuellar for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Marvin E. Mizell Deputy Attorneys General, for Plaintiff and Respondent.

In 2012, defendant and appellant Misael Madrigal Salas, a Mexican citizen, pled no contest to two misdemeanor counts of indecent exposure and one felony count of false

1

impersonation of another. Defendant voluntarily left the United States in April 2012 after immigration proceedings were instituted against him based on his indecent exposure convictions. In 2019, defendant filed a motion to set aside his conviction pursuant to Penal Code section 1473.7[1] (motion) and additionally relied on section 1016.5. He submitted his own declarations attesting that he would not have entered a guilty plea if he was informed by his counsel, and the court, of the immigration consequences at the time he entered into the plea. The trial court denied the motion without a hearing. The trial court excluded defendant's declarations based on defendant not being available for cross-examination (he lived in Tijuana); denied any further continuance for defendant to set up a video conference to make him available for cross-examination; and refused to consider the motion under section 1016.5.

Defendant appeals, contending (1) he was not afforded a hearing on the merits of the motion pursuant to sections 1016 and 1473.7; (2) the trial court failed to hear and make a ruling on the additional ground raised in the motion that he was entitled to relief under section 1016.5;; (3) the trial court should have granted the motion because the record supports that the trial court never gave him immigration warnings, which is grounds for the court to grant the motion pursuant to section 1016.5; (4) the trial court erred by finding that his declaration and his wife's declaration submitted in support of the motion were inadmissible hearsay; and (5) once the declarations are considered, the motion should be granted by this court.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

**FACTUAL AND PROCEDURAL HISTORY**

A.  <u>SUMMARY OF FACTS</u>

Defendant pled guilty and no appeal was taken from the entry of his plea.  As such, the only facts are those from the police report.  On May 26, 2011, in Fontana, defendant exposed his genitals and masturbated in front of two females he did not know, at two separate locations.  Defendant was arrested and found in possession of a false social security card and a false permanent resident card.

B.  <u>PLEA AND SENTENCE</u>

Defendant was charged in a felony complaint in count 1 with "use of false documents" (all caps. omitted) (§ 114) and in counts 2 and 3 with misdemeanor indecent exposure (§ 314, subd. (1)).  Defendant entered into a plea agreement, which provided that count 1 would be dismissed, defendant would admit to the misdemeanor indecent exposure in counts 2 and 3, and the information would be amended to add a charge of false impersonation of another (§ 529) in count 4, which he would admit.  Defendant was advised in the plea agreement that the possible state prison sentence for a violation of section 529 was 16 to 23 months but the district attorney had agreed to a 16-month sentence with credit for time served.  Defendant would serve no additional prison or jail time.

Defendant initialed the following language that appeared on the plea agreement: "I understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United States, or denial of naturalization will result from a conviction of the offense(s) to which I plead guilty/no contest."  Defendant signed the plea agreement

3

on March 9, 2012. Included was a certificate of the interpreter who declared, under penalty of perjury, that the entire contents of the plea agreement were translated from English to Spanish directly to defendant and that defendant signed the plea agreement. Defendant's counsel, San Bernardino County Deputy Public Defender Maria Lacorte, attested on the plea agreement that she "personally read and explained the contents of the above Declaration to the Defendant" and observed defendant sign the Declaration.

The minute order states "The Court, after readvisement of each of these rights, finds that the Defendant understands the charge(s), the possible penalties, right against self-incrimination, to confront and cross[-]examine witnesses, to a public and speedy trial, to Jury trial, to have an attorney present at all stages of the proceedings and to the Public Defender if indigent and to the compulsory process of the court to subpoena witnesses." The reporter's transcript from the plea agreement proceedings was not made part of the record. Defendant was sentenced to state prison on count 4 to the low term of 16 months. He was to serve 180 days in county jail on counts 2 and 3. He was given credit for time served and did not have to serve any additional time.

C.    MOTION

On August 29, 2019, seven years after defendant entered his guilty plea, defendant filed his motion, which was entitled "Notice of Motion and Motion to Vacate Conviction and Set Aside Guilty Plea Pursuant to California Penal Code § 1473.7." (All caps. omitted.) Defendant's counsel noted that defendant would be absent from the proceedings because he lived in Mexico and was not eligible to enter the United States. Defendant's counsel provided in the body of the motion that it was brought under

4

sections 1016, 1473.7 and 1385 on the grounds that defendant's former counsel, Lacorte, and the deputy district attorney did not fulfill their duty under section 1016, defendant was not aware that he would be deported and he was entitled to have his plea vacated in the interests of justice. Further, defendant's trial attorney did not make an effort to negotiate an immigration-safe plea. Defendant was unaware that his guilty plea would have "profound immigration consequences." Defendant pleaded guilty but was not aware of the actual deportation consequences. Defendant's counsel alleged that defendant would not have pleaded guilty if he had known that deportation proceedings would be brought against him causing him to agree to voluntary depart the United States.

Defendant's counsel contended that Lacorte was ineffective. Lacorte never discussed with defendant the immigration consequences of the plea bargain. Further, she did not seek an alternative disposition that would not have immigration consequences. Lacorte had to provide an unequivocal warning to defendant that he would probably be deported. Defendant's counsel also argued that the prosecution failed to properly consider the immigration consequences when negotiating the plea as required pursuant to section 1016.3.[2]

Defendant's counsel argued that defendant was prejudiced by Lacorte's performance as he was left with no alternative but to leave the United States. His crime made him deportable. Defendant would have rejected the plea even though he would be required to serve more jail time. Defendant's counsel finally argued that the trial court

---

[2] Section 1016.3 was effective January 1, 2016. (Stats. 2015, c. 705 (AB 1343) § 2, eff. Jan. 1, 2016.) As such, it does not seem applicable to a plea negotiated in 2012.

5

had the power pursuant to section 1385 to dismiss defendant's convictions in the interests of justice.

In support of the motion, defendant provided his own declaration. He originally entered the United States in 2004 in pursuit of a better life. He was unable to appear in court on the motion due to his "inadmissibility" to enter the United States. He married Nancy Vargas Plasencia in Mexico in November 2016. They had been dating since 2006. She was a United States citizen. They had a daughter on August 14, 2017. He gave his version of the events leading to his arrest and claimed that he was innocent. Defendant admitted the documents in his possession at the time of his arrest were fake. He insisted his time in jail was "unbearable as I was beat several times, emotionally and physically abused." Other inmates asked him to transport drugs for them when he went to court appearances, and when he refused, they beat him up. None of his attorneys spoke Spanish and they had to rely on an interpreter. Lacorte never told him that he was going to be deported. "The interpreter told me that there could be immigration consequences. She also said that it was the norm to tell immigrants that." Lacorte never told him about any alternative plea agreements.

Defendant claimed, "If I knew the certainties of immigration consequences I would not have accepted the plea deal." He accepted the plea bargain based on Lacorte advising him that it was the best option for him. He would be willing to do more jail time to avoid the immigration consequences. Defendant claimed that he lived in Tijuana due to the criminal charges against him.

Other evidence attached to the motion included the felony complaint; police reports; and the minute order from the plea deal, which is set forth *ante*. The reporter's transcript of the taking of defendant's plea was not provided. Defendant admitted he was born in Mexico.

Nancy Vargas Plascencia also provided a declaration. She was married to defendant and they had a daughter. Defendant had to leave the United States because of the criminal charges. While defendant was in jail, he was beaten and threatened. "Misael tried to keep his plea of 'not guilty.' However, due to the circumstances he was experiencing in jail, we felt that it was best that he accepted a plea so he could be released and safe." Plascencia and defendant had no knowledge when he accepted the plea that he would be deported from the United States if he did not voluntarily leave. He would have not accepted the plea if he had known. Plascencia had to take care of their child by herself and had to send defendant money.

Defendant's counsel also provided a declaration. She attested that she contacted Lacorte on July 2, 2019. Lacorte provided her notes from the plea, which included, "Client wants to plead guilty to less time. Understand he will be deported. Not a US citizen." Lacorte would not provide a declaration because she had no other recollection of the case except what was in the notes. She did not respond to defendant's counsel as to whether she sought an alternative disposition with no immigration consequences.

Defendant's counsel also provided information prepared by the Immigrant Legal Resource Center on the immigration consequences for different crimes. Plascencia's father and mother provided declarations regarding how hard it was for Plascencia to raise

7

her daughter without defendant's help. Also included with the motion were pictures of defendant and his daughter.

D.      OPPOSITION TO THE MOTION

The San Bernardino County District Attorney's office filed opposition to the motion on October 11, 2019. The People argued that the motion should be denied because it was untimely, parts of the statute were unconstitutional as applied to this case, defendant could not obtain relief unless he was subject to cross-examination, and he had failed to show attorney error or prejudice.

The People noted that Lacorte represented defendant and that a Spanish interpreter helped with the plea agreement. Defendant was facing five years for the section 114 charge in count 1 of the felony complaint and the plea agreement that was negotiated dismissed this charge. Defendant was given credit for the time he served in jail and was released from custody. The People noted that the written plea agreement contained a provision notifying defendant of the possibility he would be deported and that he had sufficient time to consult Lacorte regarding the meaning of the plea agreement. Defendant acknowledged being assisted by an interpreter. Lacorte attested on the written plea agreement that she explained the contents of the plea agreement.

The People objected to the consideration and admission of defendant's declaration unless he was subject to cross-examination. Although a hearing pursuant to section 1473.7 allows the hearing to proceed without defendant upon a finding of good cause, the People were still entitled to due process pursuant to Article I, section 29 of the California Constitution which provided for cross-examination. Further, information in defendant's

8

declaration regarding his current family situation was irrelevant. The People objected on the grounds of hearsay to Plascencia's declaration. Further, the materials from the Immigrant Legal Resource Center should be excluded. The declarations of Plascencia's parents should be excluded as irrelevant, they were not executed under penalty of perjury and were hearsay.

The People also stated that it did not concede that sections 314 and 529 rendered defendant deportable and excludable. Defendant had the burden of showing that he was deportable and excludable due to the criminal charges in the case. He did not provided the court with a notice to appear filed in federal court initiating the immigration proceedings.

The People additionally argued that the motion was untimely. Defendant had not shown reasonable diligence in filing the motion. Defendant must have filed the motion within a reasonable time of discovering the immigration consequences. According to defendant, he was aware of the immigration consequences in 2012 but waited until September 2019 to file the motion, which was two years after section 1473.7 took effect.

The People argued the statute violated the principle of separation of powers. Defendant's judgment was final in 2012. Section 1473.7 was effective in 2017. Section 1473.7 could not be used to vacate defendant's judgment without violating the separation of powers.

The People additionally contended that defendant had failed to provide corroborative evidence of his claims that he would not have taken the plea agreement if he had been adequately advised of the immigration consequences. Defendant's self-

9

serving statement had to be corroborated. The People alleged defendant was properly advised of the immigration consequences. Further, at the time of the plea, Lacorte did not have an obligation to investigate immigration consequences or negotiate a non-deportable sentence. Attached to the opposition, was the complete police report.

On January 16, 2020, defendant filed a waiver of appearance pursuant to section 977, subdivision (a).

Defendant's counsel filed a reply to the People's opposition to the motion. Defendant was willing to submit to cross-examination but was not available. Defendant had been deported from the United States and the court was unable to compel his appearance. Defendant had good cause as to why he could not be present at the hearing on the motion. According to defendant, he was unable to obtain a green card to testify. Defendant's due process rights would be violated by having his declarations excluded. The only way to be subject to cross-examination would be by illegally crossing the border. The declarations were sufficient evidence to support defendant's motion. He would have not pled guilty if he had been aware of the immigration consequences. His declaration was admissible as a hearsay exception because he was unavailable.

The declarations from Plascencia and her family were admissible to show the consequences of his deportation. Further, defendant was diligent in seeking relief. Defendant argued that section 1473.7 was valid and he was entitled to its protections.

Attached as an exhibit, defendant's counsel provided the notice to appear, which initiated deportation proceedings against defendant based on the section 314, subdivision

10

(1) charge. Defendant agreed to voluntary departure in lieu of removal. Defendant was to depart on or before April 9, 2012.

Defendant submitted a supplemental declaration. He retained an attorney immediately upon becoming aware of section 1473.7. Defendant additionally declared, "I did not receive immigration warnings by the court as required under PC Section 1016.5." New declarations were submitted from Plascencia's parents. Also included was a letter from a law firm explaining immigration consequences of different crimes.

E.    FIRST HEARING ON MOTION

On January 24, 2020, the trial court held a hearing on the motion. The trial court noted that the statements by defendant in his declarations were contradicted by the court file. Based on the conflict, the People would need to cross-examine defendant. The trial court felt it could not consider defendant's declarations without the opportunity for the People to cross-examine defendant. The trial court also expressed concern regarding the emails between Lacorte and defendant's current counsel. The statements by Lacorte were privileged and defendant had not waived the privilege. Based on the exclusion of defendant's declaration and the emails, there was no evidence for the trial court to consider in ruling on the motion. The People tried to admit the email from trial counsel as evidence in its favor but the trial court excluded it. Lacorte[3] was in court and could be subject to cross-examination by defendant.

---

[3] Since 2012, Lacorte had changed her last name to Lee.

11

Defendant's counsel requested a continuance to further brief the issue of the admission of defendant's declaration. The trial court again expressed that section 1473.7 did not address the complete inability of a defendant to be cross-examined on a declaration. The declaration was contradicted by other evidence so cross-examination of defendant was crucial. The trial court granted the continuance for the sole purpose of defendant's counsel providing case law that allowed the motion to proceed without defendant being available for cross-examination. The trial court also noted the declaration from Plascencia was hearsay and would not be considered.

F.   ADDITIONAL FILINGS

After the hearing, on February 4, 2020, defendant's counsel filed a request for the trial court to issue a subpoena for defendant's appearance under section 1342; a request for defendant to appear by video call; and a request for continuance to allow another counsel to travel to Tijuana to appear with defendant on the video call. Defendant was willing to present himself at the hearing if allowed to enter the United States. If defendant could not appear, defendant's counsel requested that he be allowed to appear via a video call.

Defendant's counsel included defendant's waiver of appearance pursuant to section 977, subdivision (a). Defendant's counsel also submitted a survey and finding prepared by the Judicial Council of California regarding video remote technology in the courts. Defendant submitted another supplemental declaration indicating he was willing to appear by video. He could appear by Skype or Facetime.

12

Defendant's counsel also submitted a supplemental brief of cases in support of the motion. Counsel argued that the People's right to due process was not equivalent to the defendant's right to due process, and it would be a violation of defendant's due process rights to exclude his declaration; it was the only way he could raise the issue. The reporter's transcript of the plea agreement had been lost. Counsel also referred to subdivision (d) of section 1473.7, which allowed for the hearing to proceed without defendant's presence if defendant's counsel was present and the court finds good cause as to why the defendant could not attend the hearing. Defendant's counsel argued that the trial court should admit the defendant's declaration as defendant's due process rights outweighed the People's rights.

Another hearing was conducted on February 14, 2020. The trial court advised defendant's counsel that the court did not issue subpoenas but that counsel could try to subpoena defendant. The trial court then addressed the request for continuance for defendant to appear by video conference. The People objected arguing that video conferencing was not appropriate for cross-examination. The People did not believe that there was a constitutional right to appear by video conference. Defendant's counsel argued that defendant wanted to be present but was not allowed in the United States.

The trial court noted there was video technology for arraignments. Cameras were set up through the Department of Corrections and there were courtrooms set up to view the video. However, the trial court was unaware of video conferencing being utilized for cross-examination in the trial courts. The trial court was willing to grant a continuance if defendant's counsel could set up a system where the trial court and attorneys could see

13

defendant, and defendant could see the trial court and the attorneys. The trial court was willing to allow defendant's counsel to try to set up the appropriate video conferencing by the next hearing, which was scheduled for February 21, 2020.

The People filed supplemental opposition to defendant appearing by video conference. The People had a right to cross-examination. The People had due process rights under Article I, section 29, and defendant was seeking to enforce a state statutory right. The People insisted that they were entitled to cross-examination in person. There was no authority permitting the court to have cross-examination of witnesses by video conference. The People would be prejudiced as they would not be able to adequately cross-examine him with documents.

Defendant's counsel filed a response to the supplemental opposition filed by the People. Defendant had the right to exercise his right under the law to bring the motion under section 1473.7. There was no question defendant was unavailable. The motion could be supported by defendant's declaration. The trial court placed an undue burden on defendant in trying to exercise his rights. He would be required to spend thousands of dollars to pay counsel to go to Tijuana and also to provide adequate video equipment. Defendant's counsel asked that the trial court allow defendant to participate remotely with the equipment, means and resources defendant was able to afford and allow his declarations to be admitted as evidence if the equipment provided was not satisfactory.

G.   RULING

The trial court heard argument on February 21, 2020. The trial court reiterated that it was not going to consider defendant's declarations if he was not available for

14

cross-examination. The trial court was concerned because defendant's credibility was paramount in the case. The trial court found defendant was unavailable but it was still not appropriate to consider his affidavit. The trial court noted that unavailability was required for some hearsay exceptions but in itself was not a hearsay exception. Defendant's counsel argued that the only way defendant could be heard in the case was through his declaration. Defendant's counsel also noted the trial court gave only three days to defendant to set up the video call.

The People argued that no cases were presented to the court that it could consider cross-examination by video conference for a Penal Code section 1473.7 motion. Pursuant to Evidence Code section 773, subdivision (a), the People had a statutory right to cross-examine defendant. Evidence Code section 711 required that it be done in court. Further, the Legislature had provided for video testimony for arraignments and vulnerable victims, but not for a motion pursuant to section 1473.7.

Defendant's counsel insisted that the motion also raised a claim pursuant to section 1016.5. It was a clerical error that it did not appear in the caption of the motion. Defendant's counsel argued that just initialing the plea agreement was not sufficient evidence that defendant understood the plea agreement.

The trial court took the matter under submission.

The trial court denied the motion on June 1, 2020. The trial court submitted its findings and ruling in writing. The trial court noted that defendant had been represented by counsel, who was assisted by an interpreter at the time the plea agreement was signed. The trial court noted defendant initialed the box that he understood he may be deported.

15

The trial court in a footnote stated, "In the motion caption it indicated §1473.7, in the notice it was indicated as §§ 1016, 1473.7 and 1385. This ruling is only as to the § 1473.7 as that was the decision of counsel being the appropriate section."

The trial court granted the section 977 waiver of appearance filed by defendant but indicated that such waiver did not absolve defendant of any evidentiary obligation. The trial court also found the motion was timely. Further, the misdemeanor conviction of section 314, subdivision (1), was the cause of defendant's removal from the United States.

The trial court found defendant's declarations were not admissible because he was not subject to cross-examination. Defendant's credibility was "paramount" and the People had a due process right to cross-examination. The trial court could not rely on defendant's self-serving declarations and the declarations conflicted with the court record. The trial court concluded, "Without cross-examination, the court could not make a determination on the credibility of the Defendant as to any issue. While the court recognizes the difficulties this presents to those having been removed, it is a fundamental evidentiary issue without which this court cannot make proper rulings. [¶] Defense proffered remote testimony. This court is not aware of any authority for such. In reviewing case law as well as the objections raised by the People, this court could not find any satisfactory manner in which the Defendant could testify remotely." The trial court excluded the declarations.

The court excluded any reference to the email from defendant's counsel at the time of the plea as defendant had not waived the attorney/client privilege. The other

16

declarations from his family were irrelevant to the plea or were hearsay and were excluded.  The trial court again noted that based on counsel's indication at the hearing, there would be no ruling under section 1016.  However, the trial court additionally stated that a preponderance of the evidence showed defendant was advised of the possibility of deportation.  The trial court stated, "Additionally, the court did reconsider the remote testimony in light of the strides made in video access that became necessary during the emergency, the court continues to deny remote testimony for the reasons stated above."  The motion was denied.

## DISCUSSION

### A.    SECTION 1473.7 MOTION

Defendant essentially argues as to the section 1473.7 motion that the trial court erred by excluding his declarations as they were the only way that he could participate in the proceedings.  Such exclusion violated his due process rights.  The trial court erred by finding that the People's due process rights to cross-examine him outweighed his due process rights to have his motion heard by the only means available to him.  He additionally contends the trial court placed an undue burden on him to provide and pay for his video appearance and by denying him a continuance to secure such technology.  Defendant seeks to have this court review the motion de novo and grant the motion based on his declarations alone.

"Effective January 1, 2017, the Legislature passed Assembly Bill No. 813 (2015–2016 Reg. Sess.) adding section 1473.7 to the Penal Code.  (Stats. 2016, ch. 739, § 1.)  The section provided relief to those people who were 'no longer imprisoned or

17

restrained.'  (§ 1473.7.)  According to the author, the bill was necessary because at the time, 'under California law, there [was] no vehicle . . . for a person who is no longer in actual or constructive custody to challenge his or her conviction based on a mistake of law regarding immigration consequences or ineffective assistance of counsel in properly advising of these consequences when the person learns of the error post-custody.'  (Sen. Com. on Public Safety, Com. on Assem. Bill No. 813 (2015–2016 Reg. Sess.) July 7, 2015, at p. 6.)"  (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1129 (*DeJesus*).)  The section has been amended several times.

As amended effective January 1, 2019, section 1473.7, subdivision (a)(1) provides, "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for either of the following reasons:  [¶]  . . . The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."[4]

"All motions shall be entitled to a hearing.  Upon the request of the moving party, *the court may hold the hearing without the personal presence of the moving party provided that it finds good cause as to why the moving party cannot be present*.  If the

---

[4] Section 1473.7 was amended in 2020 effective January 1, 2021.  There is no significant change from the section applicable at the time that defendant's motion was heard and we will refer to the version effective January 1, 2019.

18

prosecution has no objection to the motion, the court may grant the motion to vacate the conviction or sentence without a hearing." (§ 1473.7, subd. (d), italics added.)

Pursuant to section 1473.7, subdivision (e)(1), in ruling on the motion, "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a). For a motion made pursuant to paragraph (1) of subdivision (a), the moving party shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization."

Subdivision (e)(4) provides, "When ruling on a motion under paragraph (1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."

Under the 2019 version of section 1473.7, a defendant may simply show his own subjective error in not knowing or understanding his plea's actual or potential adverse immigration consequences and need not show ineffective assistance of counsel pursuant to *Strickland v. Washington* (1984) 466 U.S. 668, even if the motion is based on errors by counsel. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1008-1009 (*Camacho*); *People v. Mejia* (2019) 36 Cal.App.5th 859, 871 (*Mejia*).) As the moving party, the defendant bears the burden of showing the legal invalidity of his prior conviction by a preponderance of the evidence. (*Camacho,* at p. 1005.) "To obtain relief, [a defendant]

must show by a preponderance of the evidence that the plea was legally invalid due to a prejudicial error." (*DeJesus*, *supra*, 37 Cal.App.5th at p. 1133.)

The California Supreme Court recently addressed how courts should determine prejudice in deciding section 1473.7 motions in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*). "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry included defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral-negotiated deposition was possible." (*Vivar*, at p. 485.) "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78 (*Ogunmowo*).)

The *Vivar* court also addressed the proper standard of review of a trial's court decision on a section 1473.7 motion. It found that the proper standard was "independent review" finding it appropriate based on multiple factors including, "the history of section 1473.7, the interests at stake in a section 1473.7 motion, the type of evidence on which a section 1473.7 ruling is likely to be based, and the relative competence of trial courts and

20

appellate courts to assess that evidence." (*Vivar*, *supra*, 11 Cal.5th at p. 436.) " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' " (*Ibid.*) The Supreme Court noted, " ' "[i]ndependent review is not the equivalent of de novo review." ' " (*Ibid.*) It additionally noted that, "In section 1473.7 proceedings, appellate courts should similarly give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Ibid.*) It concluded, "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at pp. 36-37.)

However, *Vivar* and the statute do not address how a *trial court* should conduct the hearing on the motion pursuant to section 1473.7. Here, the trial court excluded the declarations by defendant based on the inability of the defendant to be available for cross-examination. The trial court found that the People's right to due process "in this situation differs from those involving shield statutes etc." The trial court stated that credibility of defendant was "paramount." The determination of credibility required in-person testimony and cross-examination of defendant. This court has found no case law or language in the statute that supports the exclusion of a defendant's declaration when bringing a section 1473.7 motion. The statute does provide that a hearing on a section 1473.7 motion can proceed without defendant's presence, and that a hearing need not be conducted if the People concede that the motion should be granted. It appears that the trial court incorrectly focused on the due process rights of the People and should not have excluded the declarations.

In *People v. Ault* (2004) 33 Cal.4th 1250, the court discussed the due process rights of the People in determining the proper standard of review (abuse of discretion or de novo review) when a trial court grants a motion for new trial based on prejudicial juror misconduct and the People file an appeal. (*Id.* at pp. 1255, 1259-1260.) The People argued that the proper standard was de novo arguing "On the assumption that 'due process' means 'equal process,' the People urge that if a defendant receives independent review on the issue of juror bias when the trial court denies a new trial, the People are entitled to the same standard of review when the trial court finds prejudice and grants a new trial." (*Id.* at p. 1269.) The *Ault* court stated, "However, we have rejected the notion that 'the [P]eople's right to due process of law must be the exact equivalent to a criminal defendant's right to due process.' (*Miller v. Superior Court* (1999) 21 Cal.4th 883, 896, . . . [People's state constitutional right to due process does not 'trump' provisions of state Constitution's 'newsperson's shield' provisions, though defendant may have superior *federal* due-process and fair-trial right to discover newsperson's source]; see also *Menendez v. Superior Court* (1992) 3 Cal.4th 435, 456-457, . . . [People's state constitutional right to due process does not 'trump' existing statutory privileges and immunities, including psychotherapist-patient privilege].)" (*Id.* at p. 1269.) The court reasoned, "Certainly the People, and society at large, have a significant *interest* in preserving fair convictions. The trial court's discretion to award a new trial must be exercised with due regard to this important interest. Nonetheless, the People fail to persuade us that they have a due process right—equivalent to the defendant's right to be free of conviction by a biased jury—to avoid *retrying* criminal charges before a new jury

22

unless an appellate court comes to an independent conclusion that the trial court's determination of prejudice from juror misconduct was correct. We therefore conclude that article I, section 29 of the California Constitution affords the People no due process right to independent review of a trial court order granting a new trial on that ground." (*Ault*, *supra*, 33 Cal.4th at pp. 1269-1270.)

The determination by the trial court in this case placed the People's due process rights above those of defendant. Defendant was not available, as determined by the trial court, but the only way for him to appear at the hearing was by his declaration, which was excluded. As stated, the Legislature anticipated that some defendants would not be available for the hearing. The Legislature specifically provided that the hearing on the section 1473.7 motion could be conducted outside the presence of the defendant. (§ 1473.7, subd. (d).) There is no indication that the Legislature intended that the defendant would have to be made available for cross-examination in order for the trial court to consider the motion and the defendant's declarations. As such, the Legislature anticipated there would be no opportunity for the People to cross-examine the defendant by finding that the hearing was allowed to proceed without the defendant. It places an undue burden on a defendant who may be in federal custody awaiting deportation, or who may already have left the United States and cannot return, like defendant in this case, to be available for cross-examination. It appears the appropriate resolution here was that the

declarations were admissible despite defendant being unavailable for cross-examination.[5]
The trial court should have considered defendant's declarations in support of the motion.

Such result is supported by *Vivar*. The California Supreme Court found that
independent review by the appellate court was proper because a majority of these
motions are based on a cold record. It noted, "Where, as here, the facts derive entirely
from written declarations and other documents, however, there is no reason to conclude
the trial court has the same special purchase on the question at issue." (*Vivar*, *supra*, 11
Cal.5th at p. 436.) Although the California Supreme Court did not address the issue
involved here, it recognized that the trial courts may only have a declaration in deciding a
section 1473.7 motion and implied that live testimony was not necessary.

It is further supported by prior cases in which the trial court has considered only
the defendant's declaration and contemporaneous evidence presented with the motion in
deciding section 1473.7 motions. In *Ogunmowo*, the defendant sought to have his 1989
conviction vacated wherein he admitted to a charge of possession for sale of a controlled
substance by bringing a section 1473.7 motion. (*Ogunmowo*, 23 Cal.App.5th at p. 69.)
In 2004, deportation proceedings were instituted against the defendant based on the
conviction. (*Id.* at p. 71.) He insisted his counsel provided ineffective assistance by
failing to advise him of the immigration consequences. (*Id.* at pp. 72-73.) The
defendant's counsel at the time of the plea provided a declaration. He admitted advising

---

[5] Since we conclude that defendant's declaration was admissible without him
being subject to cross-examination, we need not address whether the trial court erred by
failing to allow for his testimony by video conference.

the defendant that there would be no immigration consequences. However, the trial court did advise the defendant that there could be immigration consequences, including deportation. The defendant provided a declaration that he did not recall the trial court's advisal and would have not taken the plea agreement if he had been properly advised of the immigration consequences. (*Id* at p. 73.) The People did not file opposition to the defendant's section 1473.7 motion. (*Ogunmowo*, at p. 73.) The trial court denied the motion finding that the defendant had failed to show ineffective assistance of counsel because it was not proven that the immigration consequences were a factor in the defendant accepting the plea. (*Id.* at p. 74.)

On appeal, the *Ogunmowo* court relied on the declarations from the defendant and his counsel to support that the defendant was misadvised by his counsel that there would be no immigration consequences, and that the defendant would not have taken the plea deal if he was aware he would be deported. (*Ogunmowo*, *supra*, 23 Cal.App.5th at pp. 76-81.) The court concluded, "Taken together [the defendant's] declaration and [his trial counsel's] affidavit demonstrate a reasonable probability [the defendant] would not have pleaded guilty if [trial counsel] had not misadvised him. Accordingly, [the defendant] established prejudice." (*Id.* at p. 81.)

In *DeJesus*, *supra*, 37 Cal.App.5th 1124, the defendant filed a section 1473.7 motion and submitted his declaration, records regarding his legal status, and a declaration from his post-conviction attorney in support of his motion. (*Id.* at p. 1128.) The appellate court concluded that the defendant had failed to produce sufficient evidence of prejudice by failing to present contemporaneous evidence to substantiate his post hoc

25

assertion that he would not have accepted the plea agreement if he was aware of the immigration consequences. (*Id.* at pp. 1133-1135, 1137.) Although the trial court found that there was insufficient evidence of prejudice, it considered the defendant's declaration despite him not testifying.

The courts have accepted declarations without testimony and considered the declarant's veracity in the declarations by considering corroborating evidence from the time of the plea agreement. As such, the trial court should have admitted defendant's declarations and considered the contemporaneous evidence supporting the claims made in the declarations.

Further, the admission of defendant's declaration is supported by Code of Civil Procedure section 2009, which states: "An affidavit may be used to verify a pleading or a paper in a special proceeding, to prove the service of a summons, notice, or other paper in an action or special proceeding, to obtain a provisional remedy, the examination of a witness, or a stay of proceedings, and in uncontested proceedings to establish a record of birth, *or upon a motion*, and in any other case expressly permitted by statute." Code of Civil Procedure section 1102 makes civil rules of evidence applicable to criminal actions. The People argue that Code of Civil Procedure section 2009 only applies to motions brought prior to trial on procedural matters. However, they provide no case law to support such statement.

Finally, there is no fundamental unfairness to the People in not being allowed to cross-examine defendant. The trial court cannot grant the motion solely on the self-serving statements made in the declaration. As stated, "Courts should not upset a plea

26

solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Ogunmowo*, *supra*, 23 Cal.App.5th at p. 78.) The trial court cannot grant the section 1473.7 motion based solely on defendant's declaration. While certainly defendant's testimony would shed light on whether he would have accepted the plea, it was not necessary for the trial court to resolve the motion. The trial court must consider any other contemporaneous evidence along with the declaration in deciding a section 1473.7 motion. (See *Vivar*, *supra*, 11 Cal.5th at p. 438 ["[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with ' "objective evidence" ' "].) Such contemporaneous evidence can be admitted by counsel. Hence, in order to preserve a defendant's right to bring a motion pursuant to section 1473.7, the trial court here should have admitted defendant's declaration even without the ability of the People to cross-examine defendant.

We note that *Vivar* directs this court to independently review the record and determine if defendant has shown prejudice. However, in this case, defendant was not given a hearing on the merits of his motion under the applicable law and the trial court did not review the motion on its merits. (Pen. Code, § 1473.7, subd. (d) ["[a]ll motions shall be entitled to a hearing"].) Moreover, it appears the court erred by excluding Lacorte's testimony. By raising the claim in the motion that he was not advised by counsel of the immigration consequences, it appears defendant waived such privilege in

27

connection with the resolution of the motion. (See *People v. Ledesma* (2006) 39 Cal.4th 641, 690-691; Evid. Code, § 958.) The People were entitled to introduce Lacorte's testimony at the hearing. While this court can independently review the record, if the record is not complete, it appears the appropriate remedy is remand for the record to be fully developed. As noted in *Vivar,* "Courts should subject the trial court's prejudice finding under this statute to independent review, a standard that heavily weighs trial court factual findings based on the court's own observations, but not trial court findings arising only from a cold record." (*Vivar*, *supra*, 11 Cal.5th at p. 440.) Thus, we will reverse the trial court's order and remand the matter for the trial court to review all of the evidence, which may include testimony from Lacorte, under the prejudice standard set forth in *Vivar*.

B.      SECTION 1016.5

Defendant further contends the trial court erred by refusing to consider defendant's claim pursuant to section 1016.5. He insists the trial court did not advise him of the immigration consequences when accepting the plea agreement.

Section 1016.5 requires the trial court to administer the following advisement before accepting a plea of guilty or nolo contendere: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).)

28

Section 1016.5 further provides that if "the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty."  (§ 1016.5, subd. (b).)

To prevail on a motion to vacate under section 1016.5, a defendant must show he "was not properly advised of the immigration consequences of the plea as required by section 1016.5, subdivision (a); there existed, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and the defendant was prejudiced by the nonadvisement." (*People v. Arendtsz* (2016) 247 Cal.App.4th 613, 617.)  To show prejudice, the defendant "must prove it was reasonably probable he or she would not have entered a guilty, no contest or nolo contendere plea if properly advised."  (*Ibid.*)  "To that end, the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised.  It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*People v. Martinez* (2013) 57 Cal.4th 555, 565.)

It is well settled that the advisement required by section 1016.5 need not be given orally. (*People v. Quesada* (1991) 230 Cal.App.3d 525, 536, superseded by statute on other grounds as stated in *People v. Totari* (2003) 111 Cal.App.4th 1202, 1206-1207, fn. 5.) "It is sufficient if . . . the advice is recited in a plea form and the defendant and his counsel are questioned concerning that form to ensure that defendant actually reads and understands it." (*Quesada*, at p. 536.) "Only if in questioning the defendant and his attorney the trial court has reason to believe the defendant does not fully comprehend his rights, must the trial court conduct further canvassing of the defendant to ensure a knowing and intelligent waiver of rights." (*People v. Castrillon* (1991) 227 Cal.App.3d 718, 722.) We review the trial court's decision to grant or deny a section 1016.5 motion for abuse of discretion. (*People v. Zamudio* (2000) 23 Cal.4th 183,192.)[6]

Here, the motion filed by defendant's counsel itself was not clear that defendant was raising a claim pursuant to section 1016.5. However, throughout the proceedings, defendant's counsel made it clear that this was an issue to be decided by the trial court. Defendant, in his supplemental declaration, stated that he did not receive immigration warnings from the trial court.

The People contend the trial court properly heard argument on defendant's section 1016.5 motion on February 21, 2020. The record does not support that the trial court properly considered the section 1016.5 motion at the hearing. During argument that day, defendant's counsel stated, "The defendant is moving this Court to vacate its plea based

---

[6] *Vivar* does not appear to change the standard of review for motions brought pursuant to section 1016.5.

on 1473.7 and 1016.5." The trial court responded, "Counsel, I didn't think we were at a 1016.5." Counsel responded, "Within the motion, yes your honor." The trial court stated, "I thought that was specifically denied. Am I confusing cases?" Defendant's counsel stated, "I believe so, your Honor." Defendant's counsel confirmed that defendant was claiming he did not receive the court advisals under section 1016.5 and also received ineffective assistance of counsel.

The People responded that defendant's counsel had captioned the motion as being pursuant to section 1473.7 and not section 1016.5. None of the subsequent filings referred to section 1016.5. If the trial court considered section 1016.5, the plea agreement was evidence that he was properly advised by the court.

Inexplicably, the trial court stated in its ruling, "the court makes no ruling as to any PC § 1016 motion based upon counsel's indication at the time of the hearing." The trial court did not consider the merits of defendant's section 1016.5 motion. As stated in the written ruling, it found counsel had decided not to pursue the section 1016.5 motion.

Since this court has determined that remand in order for the trial court to consider the section 1473.7 motion on its merits is appropriate, remand to the trial court for it to additionally consider the motion pursuant to section 1016.5 is proper. Since we review the trial court's ruling on a section 1016.5 motion for an abuse of discretion, the trial court is in the best position to determine the motion upon remand.

## DISPOSITION

We reverse the trial court order denying defendant's motion.  We remand for the trial court to consider defendant's motion in accordance with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
_____ J.

We concur:

RAMIREZ _____
_____ P. J.

RAPHAEL _____
_____ J.